IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| QA3 FINANCIAL CORP., | ) | 8:11CV327 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CATLIN SPECIALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| IN RE: | ) | **Bankruptcy Case No. 11-80297** |
| | ) | |
| QA3 FINANCIAL CORP., | ) | |
| | ) | |
| Debtor. | ) | |

Debtor QA3 Financial Corp. ("QA3") appeals the order of the United States Bankruptcy Court for the District of Nebraska ("Bankruptcy Court") that granted Catlin Specialty Insurance Company's ("Catlin") motion for relief from stay. For the reasons that follow, I affirm.

### I. BACKGROUND

QA3, a broker/dealer engaged in the sale of securities, possesses a Broker/Dealer and Registered Representative Professional Liability Policy ("Policy") issued by Catlin. (Bankr. Ct. Case Number 11-80297 ("Bankr. Ct.") Filing 139-1.) Catlin issued this Policy from its underwriting office in New York, New York. (*Id*.) In 2009, investors filed a significant number of Financial Industry Regulatory Authority ("FINRA") arbitration actions against QA3. (Bankr. Ct. Filing 150; Filing 12 at CM/ECF p. 2.) In turn, QA3 submitted several claims to Catlin as its insurance

provider. (Bankr. Ct. Filing 150 at p. 1.) However, a dispute arose between Catlin and QA3 regarding the value of the policy limits under the Policy. (*Id*. at p. 1; Filing 12 at CM/ECF p. 7.)

On November 23, 2010, Catlin filed a complaint for declaratory judgment regarding policy limits against QA3 in the United States District Court for the Southern District of New York ("New York Proceeding"). (S.D.N.Y. Case No. 10-cv-8844, Filing 1.) On February 1, 2011, QA3 filed an answer to the complaint, asserted counterclaims and demanded a jury trial. (S.D.N.Y. Case No. 10-cv-8844, Filing 13.) Ten days later, QA3 filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court, which automatically stayed the New York Proceeding. (Bankr. Ct. Filing 1; S.D.N.Y. Case No. 10-cv-8844, Filing 14.)

On April 28, 2011, Catlin filed a motion for relief from the automatic stay so that the New York Proceeding could continue. (Bankr. Ct. Filing 68.) On June 17, 2011, QA3 filed an adversary proceeding against Catlin in the Bankruptcy Court.[1] (Bankr. Ct. Filings 99-2 and 139.) The Bankruptcy Court held a hearing, and on July 1, 2011, entered an order that granted Catlin relief from the automatic stay ("Relief from Stay Order"). (Bankr. Ct. Filing 150.)

On July 14, 2011, QA3 filed a motion for reconsideration and motion for amendment and/or alteration of judgment, asking the Bankruptcy Court to reconsider its Relief from Stay Order ("Reconsideration Motion"). (Bankr. Ct. Filing 159.) On August 22, 2011, the Bankruptcy Court denied the Reconsideration Motion ("Reconsideration Order"). (Bankr. Ct. Filing 173.) On August 25, 2011, QA3 appealed the Bankruptcy Court's Relief from Stay Order and Reconsideration Order to this court. (Bankr. Ct. Filing 181; Filing 3.)

---

[1]The claims in the adversary proceeding are virtually identical to the counterclaims asserted by QA3 in the New York Proceeding. (*Compare* Bankr. Ct. Filing 99-2 *with* 139-1.)

2

## II. STANDARD OF REVIEW

"A decision to grant or deny a motion for relief from the automatic stay is within the discretion of the bankruptcy court and is reviewed for an abuse of discretion." *In re Crossroads Ford, Inc.*, 449 B.R. 366, 367 (8th Cir. BAP 2011). "An abuse of discretion will be found if the court's judgment was based on clearly erroneous factual findings or on erroneous legal conclusions." *Id*. "In its application, the abuse of discretion standard is nearly indistinguishable from the clearly erroneous standard." *Id*.

## III. DISCUSSION

Generally, when a party files a Chapter 11 bankruptcy petition, all proceedings "against the debtor" are stayed. *See* 11 U.S.C. § 362(a). However, § 362(d) provides certain exceptions to this rule, including relief "for cause." *Id*. § 362(d)(1). "Congress did not define cause; however, it contemplated relief from the automatic stay to allow litigation involving the debtor to proceed in another forum under appropriate circumstances." *In re Wintroub*, 283 B.R. 743, 745 (8th Cir. BAP 2002); *see also* 11 U.S.C. § 362 (historical and statutory notes) ("[A] desire to permit an action to proceed to completion in another tribunal may provide . . . cause."). In determining whether cause exists, a court "must balance the potential prejudice to the debtor, the bankruptcy estate, and the other creditors associated with a proceeding in another forum against the hardship to the movant if it is not allowed to proceed in the other forum." *In re Wintroub*, 283 B.R. at 745. "The relevant factors which the court must consider include judicial economy, trial readiness, the resolution of primary bankruptcy issues, the movant's chance of success on the merits, the costs of defense or other potential burdens to the estate, and the impact of the litigation on other creditors." *Id*.

After considering the *Wintroub* factors, the Bankruptcy Court concluded that relief from automatic stay should be granted for cause because:

3

> The litigation, both in New York and in Nebraska, relates to the interpretation of the language of the Policy under controlling New York law. The movant was the first to file and the Nebraska adversary proceeding is simply a duplication of the matters already at issue in the New York case. The Policy provides that the debtor is the representative of all parties with an interest in the Policy. The litigation concerns a state law contract dispute which is not a core proceeding. The movant is not requesting affirmative monetary relief, but only to obtain an interpretation of the meaning of contractual language. The impact on the bankruptcy case is contingent and will be the same whether the litigation is in New York or in Nebraska. If the debtor wins on its interpretation of the contract, there will be more money available for payment of claims by the insurance company. If the debtor loses, there will be less money available from the insurance and perhaps more claims in the bankruptcy case. Finally, the question whether coverage exists is a separate and distinct issue from all bankruptcy issues.

(Bankr. Ct. Filing 150 at pp. 2-3.)

On appeal, QA3 argues that the Bankruptcy Court erred in determining that cause existed to lift the automatic stay. (Filing 12.) Because QA3 does not assert that the Bankruptcy Court used the incorrect legal standard, its argument hinges on whether the Bankruptcy Court's application of the facts to the *Wintroub* factors was clearly erroneous. (*Id*.)

With regard to judicial economy and the costs of defense, QA3 contends that "motion practice in the New York Lawsuit would subject [QA3's] bankruptcy estate to additional costs and fees" because "there is nothing to suggest" that Catlin would be able to defeat a motion to dismiss or a motion to transfer the case to Nebraska. (*Id*. at CM/ECF pp. 5-7.) This argument is speculative. In addition, QA3 failed to submit any evidence to the Bankruptcy Court showing that resolution of the policy limit issue in New York, rather than Nebraska, would cost more money. (*See* Bankr. Ct. Filing 99 and 107.) Further, "[t]he mere cost of defense . . . is ordinarily considered an insufficient basis for denying relief from the stay." *In re Wiley*, 288 B.R. 818, 823

4

(8th Cir. BAP 2003); *see also In re United Imps., Inc.*, 203 B.R. 162, 166 (Bankr. D. Neb. 1996) ("[t]he cost of defense is, standing alone, ordinarily considered an insufficient basis for denying relief from the stay.")

With regard to the resolution of primary bankruptcy issues, QA3 contends that the District of Nebraska has "exclusive jurisdiction" over the policy dispute because the Policy and its proceeds are property of the bankruptcy estate. (Filing 12 at CM/ECF pp. 8-10.) In support of this argument, QA3 cites 28 U.S.C. § 1334(e)(1), which provides that a "district court in which a case under title 11 is commenced or is pending shall have *exclusive jurisdiction* . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1) (emphasis added). However, section 1334 "has no application to a dispute between the debtor and its insurers over the scope of coverage." *In the Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997); *See also Shalom Torah Ctr. v. Phila. Indem. Ins. Cos.*, No. 10-6766 (FLW), 2011 WL 1322295, at *2 (D.N.J. March 31, 2011) (acknowledging that an action to determine rights to insurance coverage does not arise under Title 11). Further, QA3 has admitted that both jurisdiction and venue are proper in the Southern District of New York. (Bankr. Ct. Filing 99-2.)[2]

In short, QA3 disagrees with the Bankruptcy Court's application of the facts to the *Wintroub* factors. Because the Bankruptcy Court's factual findings were not clearly erroneous, I find that the Bankruptcy Court did not abuse its discretion in granting Catlin relief from the automatic stay.

---

[2] QA3 also argues that the New York Proceeding is a "core proceeding." (Filing 12 at CM/ECF pp. 12-14.) The parties agree that "[w]hether or not a proceeding is core is not relevant to whether relief from the automatic stay should be granted." (*Id.* at CM/ECF pp. 12-14; Filing 13 at CM/ECF pp. 17-21.) Thus, I will not address this argument.

5

Accordingly,

IT IS ORDERED:

1. The Bankruptcy Court's July 1, 2011, Relief from Stay Order (bankr. ct. filing 150) and August 22, 2011, Reconsideration Order (bankr. ct. filing 173) are affirmed.

2. A separate Judgment will be entered in accordance with this Memorandum and Order.

DATED this 1st day of February, 2012.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.